IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

CajunLand Pizza, LLC, et al.,                    Case No. 3:20-cv-536-JGC

        Plaintiff

       v.                                        **REVISED ORDER**

Marco's Franchising, LLC, et al.,

        Defendants

In this case, CajunLand Pizza, LLC (CLP) and five former Louisiana pizza shop franchisees, (the Franchisees) (collectively, plaintiffs), sued their Toledo, Ohio-based franchisor, Marco's Franchising, LLC (MFLLC, or counter-plaintiff), its parent, Marco's Pizza Holdings, LLC, and its president, Tony Libardi (collectively, Marco's). Plaintiffs claim that Marco's made various misrepresentations to them to induce their investment in their franchises. When the Franchisees subsequently decided to sell, they allege Marco's unlawfully refused to approve a bona fide buyer and attempted to drive up their costs so that they would be forced to accept a lower offer from a Marco's "insider."

Following several rounds of motions to dismiss, MFLLC became the only remaining defendant in the case. MFLLC then filed counterclaims against the Franchisees, CLP, and their attorneys (collectively, counter-defendants), asserting, in part, breach of contract for their failure to pay its attorney's fees. (Doc. 82). MFLLC claims that the contracts the Franchisees and CLP signed entitle them to such an award.

To the extent MFLLC requests attorney's fees in its counterclaims, I address that issue in this order and grant the request in part.[1]

## Background

This case has a complex history. Plaintiffs filed their initial complaint in the Eastern District of Louisiana in May 2019. (Doc. 1). In March 2020, the Eastern District of Louisiana transferred the case to this Court pursuant to mandatory forum selection clauses in the applicable contracts. (Doc. 37).

In January 2021, after finding that Ohio, not Louisiana, law applied to plaintiffs' claims, I *sua sponte* granted plaintiffs leave to file an amended complaint and plead their claims under Ohio law. *CajunLand Pizza, LLC v. Marco's Franchising, LLC*, 513 F. Supp. 3d 801 (N.D. Ohio 2021). Plaintiffs filed their amended complaint shortly thereafter. (Doc. 55).

After Marco's filed a motion to dismiss the amended complaint (Doc. 57), plaintiffs sought leave to file a second amended complaint to add several claims. (Doc. 60).

I ruled on both motions in June 2021, considering all claims in plaintiffs' amended complaint and proposed second amended complaint. *CajunLand Pizza, LLC v. Marco's Franchising, LLC*, No. 3:20-CV-536-JGC, 2021 WL 9166417 (N.D. Ohio June 8, 2021). In my order, I dismissed all claims by CLP and all claims against Marco's Pizza Holdings, LLC. I also dismissed plaintiffs' claims for tortious interference with contract, tortious interference with business relationships against all defendants except defendant Libardi, unfair competition, and all claims under the Ohio Deceptive Trade Practices Act (ODTPA).

---

[1] MFLLC also brings claims against SELA #2, Old Tyme, and their guarantors for breach of the ten-year term of their franchise agreements. I will address those claims in a separate order.

After that ruling, the following claims remained: 1) the Franchisees' claim for breach of contract, 2) the Franchisees' claim against defendant Libardi for tortious interference with business relationships, and 3) the Franchisees' claim under the Ohio Business Opportunities Act (BOPA).

In August 2021, the Franchisees filed a third amended complaint, which included claims for breach of contract and violations of BOPA against Marco's Franchising, LLC (MFLLC). (Doc. 74). MFLLC filed a motion to dismiss the Franchisees' BOPA claim. (Doc. 76). I granted that motion in December 2021. *CajunLand Pizza, LLC v. Marco's Franchising, LLC*, 574 F. Supp. 3d 540 (N.D. Ohio 2021). Following my order, the only remaining claim in the case became the Franchisees' claim for breach of contract against MFLLC.

Shortly thereafter, in January 2022, MFLLC filed its answer, affirmative defenses, and counterclaims in response to the Franchisees' third amended complaint. (Doc. 81). It filed amended counterclaims several days later. (Doc. 82).

Plaintiffs subsequently filed a motion to dismiss those counterclaims. (Doc. 89).

## Discussion

I address in this order whether MFLLC is entitled to attorney's fees for its efforts defending the claims plaintiffs have brought in this case. I find that it is, but only for some of those claims.

### 1. The Relevant Agreements

MFLLC points to a provision in the Franchisees' contracts that it claims governs the award of fees. That provision is titled "Payment of Legal Fees" and reads:

> Franchisee shall pay to Franchisor all damages, costs and expenses (including without limitation reasonable. Attorneys' fees) that Franchisor incurs subsequent to the termination or expiration of the franchise granted under this Agreement in: . . . successfully

> defending a claim that Franchisor defrauded Franchisee into signing this Agreement, that the provisions of this Agreement are not fair; were not properly entered into, and/or that the terms of this Agreement do not govern the parties' relationship.

(Doc. 13-4, pgID 264; Doc. 13-5, pgID 342; Doc. 13-6, pgID 413; Doc. 13-7, pgID 484; Doc. 13-8, pgID 550-51).

CLP's Area Representative Agreement (ARA) contains a nearly identical provision:

> Area Representative shall pay to Franchisor all damages, costs and expenses (including without limitation reasonable. attorneys' fees) that Franchisor incurs subsequent to the termination or expiration of the franchise granted under this Agreement in: . . . successfully defending a claim that Franchisor defrauded Area Representative into signing this Agreement, that the provisions of this Agreement are not fair; were not properly entered into, and/or that the terms of this Agreement do not govern the parties' relationship.

(Doc. 13-3, pgID 141).

MFLLC contends that the franchise agreements entitle it to attorney's fees from the Franchisees, and the ARA entitles it to attorney's fees from CLP.[2]

## 2. Whether the Agreements Cover Plaintiffs' Claims

### A. Claims that MFLLC Defrauded Plaintiffs

At issue first are plaintiffs' claims under the ODTPA, BOPA, and for unfair competition. MFLLC contends that in bringing each of these claims, plaintiffs sought to establish that MFLLC "defrauded" them into signing the franchise agreements and ARA. According to MFLLC, this falls squarely within the terms of the "Payment of Legal Fees" provisions, and therefore, counter-defendants must reimburse it for successfully defending those claims.

I agree as to plaintiffs' ODTPA and BOPA claims but disagree as to plaintiffs' unfair competition claim.

---

[2] CLP is no longer a party to this action because I dismissed all of its claims in my June 8, 2021 order. (Doc. 67). However, CLP is not immune from MFLLC's request, as it brought claims that MFLLC argues fall within the ARA's fee provision.

4

In support of their ODTPA and BOPA claims, plaintiffs allege that Marco's misrepresented the nature of the franchise agreements and ARA.

Specifically, in support of their ODTPA claim, plaintiffs allege that CLP and the Franchisees "learned that Marco's had deceptively misrepresented to [CLP and Franchisees] that Marco's franchisees had the right to sell a franchise free from Marco's unreasonable withholding of approval of such a sale." (Doc. 60-1, pgID 211, 214). Plaintiffs further allege that absent that misrepresentation, they would not have invested in their franchises. (*Id.*, pgID 212, 214).

In support of their BOPA claim, plaintiffs repeat their allegations that Marco's misrepresented their selling rights. (*Id.*, pgID 226). They further allege that Marco's misrepresented the amount of capital plaintiffs would need to invest for food, paper products, and freight costs. (*Id.*, pgID 225). Plaintiffs similarly assert that these misrepresentations induced them to invest in their franchises. (*Id.*, pgID 226).

Such allegations, in my view, amount to claims that Marco's defrauded CLP and the Franchisees into signing their respective agreements. It is not necessary, as counter-defendants suggest, that plaintiffs bring claims with the word "fraud" in the title, such as fraudulent misrepresentation or fraudulent inducement. The contract does not require that. It requires that plaintiffs claim they were "defrauded," not that they assert a claim for fraud.

In interpreting a contract under Ohio law, I look to the "plain and ordinary meaning" of its terms. *Valley Forge Ins. Co. v. Premier Recyclers Plastics, Inc.*, 2005-Ohio-6317, ¶ 12. My goal is to "carry out the intent of the parties, as that intent is evidenced by the contractual

language." *In re Fifth Third Early Access Cash Advance Litig.*, 925 F.3d 265, 276 (6th Cir. 2019) (citing *Lutz v. Chesapeake Appalachia, L.L.C.*, 148 Ohio St.3d 524, 526 (2016)).[3]

With those principles in mind, I focus my attention on the meaning of the term "defraud," as that term is central to MFLLC's request for fees. Black's Law Dictionary defines "defraud" as meaning: "To cause injury or loss to (a person or organization) by deceit; to trick (a person or organization) in order to get money." DEFRAUD, Black's Law Dictionary (11th ed. 2019). That is exactly what plaintiffs claim Marco's has done here. They allege that Marco's misrepresented the nature of their contractual relationship, or in other words, engaged in deception or trickery. Plaintiffs also allege that they would not have invested in the franchises absent Marco's misrepresentations; therefore, the misrepresentations caused them injury or loss.

Because the contracts squarely cover plaintiffs' allegations in support of their ODTPA and BOPA claims, I find that MFLLC is entitled to fees and costs associated with those claims.

The contracts do not, however, cover plaintiffs' claim for unfair competition. Plaintiffs' allegations in support of that claim focus on events that occurred after plaintiffs entered into the relevant agreements. (Doc. 60-1, pgID 218-19). There is no mention of plaintiffs being induced to sign the franchise agreements or ARA. Accordingly, I reject MFLLC's contention that the contracts cover plaintiffs' unfair competition claim.

### B. Claims That the Agreements Do Not Govern the Parties' Relationship

---

[3] I reject the argument that I should not engage in contractual interpretation prior to summary judgment. (*See* Doc. 91, pgID 1333). Where a contract is ambiguous, a court should wait for further development of the record before interpreting it. *Miranda v. Xavier Univ.*, No. 1:20-CV-539, 2022 WL 899668, at *5 (S.D. Ohio Mar. 28, 2022) (applying Ohio law). This is because discovery may reveal extrinsic evidence that bears on the parties' intent. However, where a contract is unambiguous, a court need not wait to interpret it. *See Williams-Diggins v. Permanent Gen. Assurance Corp.*, 157 N.E.3d 220, 231 (2020). Here, none of the parties argue that the franchise agreements or ARA is ambiguous. Therefore, I find it appropriate to interpret those contracts.

MFLLC further argues that plaintiffs made claims before the Louisiana court "that the mandatory forum selection provision and the arbitration provision in the ARA did not govern the parties' relationship." (Doc. 91, pgID 1329). Accordingly, MFLLC argues, it is entitled to fees and costs related to those claims as well. I disagree.

Regarding the forum selection clause, plaintiffs argued in their response to Marco's Motion to Transfer or to Dismiss that the clause did not apply to their claims because those claims "did not originate in the contract." (Doc. 22). The Louisiana court ultimately disagreed and granted Marco's motion to transfer. (Doc. 37).

But the question now is whether plaintiffs' argument falls within the contracts' attorney's fee provisions. I find that it does not.

Those provisions require the payment of fees where Marco's "successfully defend[ed] a claim . . . that the terms of this Agreement do not govern the parties' relationship." (Doc. 13-3, pgID 141; Doc. 13-4, pgID 264; Doc. 13-5, pgID 342; Doc. 13-6, pgID 413; Doc. 13-7, pgID 484; Doc. 13-8, pgID 550-51). When read in context, it is clear that this clause refers to a claim by plaintiffs that the agreement is fully inapplicable to the parties' relationship. In other words, it would apply if plaintiffs attempted to argue that the contract did not bind them at all. They are not making that argument – they clearly acknowledge that the contracts govern their relationships, as they are arguing breach of those contracts. Plaintiffs instead quibbled with the application of one of its terms to their specific situation. This is not sufficient under the express terms of the contract.

The same logic applies to plaintiffs' argument in opposition to Marco's motion to compel arbitration (Docs. 14, 21). Similarly there, plaintiffs argued that a specific provision of the

7

contracts did not apply to their situation. They did not argue that the entire contract did not bind them.

Furthermore, Marco's withdrew its motion to compel arbitration. (Doc. 45). Therefore, Marco's cannot satisfy the requirement in the fee provision's language that it successfully defended plaintiffs' claim regarding the arbitration clause.

### C. Whether Marco's Successfully Defended Plaintiffs' Claims

Counter-defendants argue that even if I find the franchisee contracts and ARA cover plaintiffs' claims under the ODTPA and BOPA, the contracts do not apply because MFLLC has not "successfully defended" those claims. Plaintiffs contend that MFLLC is not yet the "prevailing party" because I have not entered final judgment in the case.

MFLLC responds that the contract does not use the term "prevailing party" and that it is entitled to fees because I have dismissed the relevant claims.

I agree with MFLLC. There is no reference to the term "prevailing party" in the contracts, so I do not find the definition of that term relevant. Marco's has "successfully defended" plaintiffs' claims under the ODTPA and BOPA because it has persuaded me to dismiss those claims.

And while it is more common to award attorney's fees at the end of litigation, I see no reason why I should not resolve this issue now. Nothing that happens from now until the end of the litigation will change the outcome of this request. I dismissed plaintiffs' ODTPA and BOPA claims, and there is nothing left to be litigated with respect to them.

I therefore grant MFLLC's request for attorney's fees and costs with respect to plaintiffs' ODTPA and BOPA claims. I deny its request for fees associated with plaintiffs' unfair competition claim and claims regarding the contracts' forum selection and arbitration clauses.

**Conclusion**

It is, therefore,

ORDERED THAT

1. Counter-plaintiff's request for attorney's fees with respect to plaintiffs' ODTPA and BOPA claims be, and the same hereby, is, granted; and

2. Counter-plaintiff's request for attorney's fees with respect to the other claims outlined in its briefing be, and the same hereby is, denied.

So ordered.

James G. Carr<br>Sr. U.S. District Judge