UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

CajunLand Pizza, LLC, et al.,                  Case No. 3:20-cv-536

         Plaintiffs,

     v.                                           MEMORANDUM OPINION
                                                               AND ORDER

Marco's Franchising, LLC, et al.,

         Defendants.

## I.     INTRODUCTION & BACKGROUND

On February 12, 2021, Plaintiffs CajunLand Pizza, LLC and five former Louisiana pizza shop franchisees, (the "Franchisees),[1] filed an Amended and Supplemental Complaint against Defendants Marco's Franchising, LLC ("MFLLC"), Marco's Pizza Holdings, LLC ("MPH"), and Tony Libardi. (Doc. No. 55). In this Complaint, Plaintiffs asserted claims for: (1) violations of the Ohio Deceptive Trade Practices Act ("ODTPA"); (2) tortious interference with contract; and (3) breach of contract with CajunLand.

Collectively, the three Defendants filed a motion to dismiss this Complaint. (Doc. No. 57). In response, Plaintiffs filed both an opposition brief, (Doc. No. 61), and a motion for leave to file a Second Amended and Supplemental Complaint. (Doc. No. 60). With the motion to amend, Plaintiffs sought to add claims for: (1) unfair competition; (2) tortious inference with business relationships; (3) breach of contract with the Franchisees; and (4) violation of the Ohio Business

---

[1] The Franchisees are Ole Tyme Pizza, LLC; Crescent City Pizza, LLC; Partners Pizza, LLC; SELA PIZZA #1, LLC; and SELA PIZZA #2, LLC

Opportunity Plan Act ("BOPA"). (Doc. No. 60-1). Defendants opposed Plaintiffs' motion to amend, (Doc. No. 64), and filed a reply in support of their motion to dismiss. (Doc. No. 63). The briefing on this matter then concluded with Plaintiffs' reply in support of the motion to amend. (Doc. No. 66).

On June 8, 2021, Senior United States District Judge James G. Carr issued a ruling on both motions. (Doc. No. 67). Through this Order, Judge Carr dismissed all claims brought by CajunLand and the Franchisees' claims under the ODTPA, but he permitted the Franchisees to amend the Complaint to add the BOPA claims. After further motion practice and discussions regarding the merits of the potential BOPA claim, the Franchisees filed their Third Amended Complaint on August 30, 2021. (Doc. No. 74). In this Complaint, the Franchisees asserted claims against only MFLLC for: (1) breach of contract; and (2) violation of the BOPA. MFLLC then moved to dismiss the BOPA claim, (Doc. No. 76), and Judge Carr granted that motion on December 8, 2021.[2] (Doc. No. 80).

With only the Franchisees' breach of contract claim remaining, MFLLC filed its Answer on January 10, 2022. (Doc. No. 82). Within that Answer, MFLLC asserted counterclaims against now-dismissed CajunLand, the Franchisees, and certain individuals who were "principals, Franchise Owners, and guarantors" of CajunLand or the Franchisees. (*Id.* at 29). With these counterclaims, MFLLC alleged, in part, that CajunLand and the Franchisees had breached contracts between themselves and MFLLC by failing to pay attorney fees.

---

[2] It appears Judge Carr initially issued this Order on December 6, 2021. But this Order is no longer on the public docket. Instead, the public Order adjudicating this motion was filed on December 8, 2021. Therefore, I consider December 8, 2021, the date of issuance for purposes of this analysis.

2

CajunLand and the Franchisees filed a motion to dismiss the counterclaims on March 15, 2022.[3] (Doc. No. 89). MFLLC filed an opposition brief on April 25, 2022, (Doc. No. 91), and the reply was filed on May 23, 2022. (Doc. No. 96).

Judge Carr issued a ruling on this motion on August 8, 2022.[4] (Doc. No. 98). There, he determined that:

> As an initial matter, I find it is more appropriate to construe MFLLC's counterclaims as a request for attorney's fees. While MFLLC alleges that the contract requires plaintiffs and their attorneys (counter-defendants) to pay its fees, it does not allege that counter-defendants have failed to or refuse to do so. Simply put, it does not appear to me that MFLLC has pled facts indicating counter-defendants are in breach.

(Doc. No. 98 at 3). Judge Carr then concluded MFLLC was entitled to recover attorney fees for "successfully defending" against only the ODTPA and the BOPA claims under Section 22.9 of the Area Representative Agreement between MFLLC and CajunLand, (Doc. No. 13-3 at 42), and Section 21.11 of the respective Franchise Agreements between MFLLC and the Franchisees. (Doc. No. 13-4 at 56; Doc. No. 13-5 at 56; Doc. No. 13-6 at 58; Doc. No. 13-7 at 58; Doc. No. 13-8 at 52-53). He concluded MFLLC could not recover attorney fees for any other claims.

Nearly a year after Judge Carr ruled on the subject of attorney fees, MFLLC filed a motion to determine the amount of fees to which they were entitled for the successful defense of the ODTPA and BOPA claims. (Doc. No. 112). In response, Plaintiffs filed a brief: (1) moving for reconsideration of Judge Carr's determination that MFLLC was entitled to fees; and (2) opposing certain fees sought by MFLLC. (Doc. No. 20). MFLLC then filed two briefs: an opposition to

---

[3] Crescent City did not join this motion but had withdrawn its claim against MFLLC and had been dismissed as a Plaintiff before the motion to dismiss was filed. (Doc. No. 87). Default was entered against Crescent as to the counterclaims on May 18, 2022. (Doc. No. 95). No default judgment has issued.

[4] Judge Carr subsequently issued a Revised Order on August 31, 2022. (Doc. No. 100). The Revised Order did not alter the conclusions of his August 8, 2022 Order that are relevant here.

Plaintiffs' motion to reconsider, (Doc. No. 125), and a reply in support of the motion to determine the amount of fees. (Doc. No. 124). Plaintiffs did not file a reply in support of their motion to reconsider.

### III. MOTION TO RECONSIDER

Plaintiffs move for reconsideration on the issue of whether MFLLC is entitled to attorney fees under the Franchise Agreements, which they now argue are contracts of adhesion. MFLLC opposes this motion, alleging none of the circumstances warranting reconsideration are present here. I agree with MFLLC.

> As stated by Judge Carr,
>
> Motions for reconsideration are disfavored, and a motion for reconsideration is unfounded unless it either calls my attention to an argument or controlling authority that was overlooked or disregarded in the original ruling, presents evidence or argument that could not previously have been submitted, or successfully points out a manifest error of fact or law.

*Davie v. Mitchell*, 291 F. Supp. 2d 573, 634 (N.D. Ohio 2003). "'[A]n intervening change in controlling law'" falls within this scope of circumstances which may warrant reconsideration. *Johnson v. Peterson*, 2020 WL, 2126686, at *1 (N.D. Ohio May 5, 2020) (quoting *Plakson Elec. Materials, Inc. v. Allied-Signal, Inc.*, 904 F. Supp. 644, 669 (N.D. Ohio 1995)).

Here, Plaintiffs do not allege Judge Carr overlooked or disregarded any meritorious argument previously raised nor do they contend reconsideration is necessary to correct a manifest error of fact or law. Instead, they argue they are entitled to reconsideration because they "point to new jurisprudence regarding Ohio's interpretation and enforceability of unilateral attorney's fees provision under Ohio law." (Doc. No. 120 at 3). Specifically, Plaintiffs allege the "recent analysis" in *Total Quality Logistics, LLC v. EDA Logistics LLC*, No. 1:21-cv-164, -- F. Supp. 3d --, 2023 WL 5057333 (S.D. Ohio July 31, 2023), supports a conclusion that the unilateral attorney fee provision in the Franchise Agreements cannot be enforced. (*Id.*).

4

As correctly noted by MFLLC, the Southern District of Ohio opinion on which Plaintiffs rely is not controlling authority. Therefore, I conclude this opinion is not an "intervening change in controlling law" justifying reconsideration and deny Plaintiffs' motion.

### IV.    MOTION TO DETERMINE THE AMOUNT OF FEES

Through its motion for attorney fees, MFLLC asserts the fees should be calculated using the lodestar method and "seeks $93,234 in fees based on 219.6 hours spent between February 12, 2021, and June 30, 2023." (Doc. No. 112 at 6). Because Plaintiffs do not dispute the method of calculation, I see no reason not to apply it here.

Under this method, "the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (quoted by *Bittner v. Tri-County Toyota, Inc.*, 569 N.E.2d 464, 467 (Ohio 1991)). To be awarded fees,

> [t]he party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.
>
> The district court also should exclude from this initial fee calculation hours that were not "reasonably expended." S.Rep. No. 94–1011, p. 6 (1976). Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Copeland v. Marshall,* 205 U.S.App.D.C. 390, 401, 641 F.2d 880, 891 (1980) (en banc) (emphasis in original).

*Hensley*, 461 U.S. at 433-34.

In support of its motion, MFLLC submits a spreadsheet detailing date-by-date the number of hours for which it seeks fees and the individual who expended those hours. (Doc. No. 112-1 at 48-54). To show those hours were "reasonably expended," MFLLC submits time records that

5

provide a description of the work performed during those hours. (*Id.* at 10-47). And to support the hourly rate claimed, MFLLC submits the attestations of attorney W. Barry Blum, (*id.* at 5-6, 9), and biographies of the attorneys who performed the work. (*Id.* at 55-70).

Plaintiffs do not challenge the reasonableness of the hourly rates sought but seek exclusion of certain hours from the fee calculation. Specifically, Plaintiffs assert MFLLC is not entitled to any fees after the ODTPA and BOPA claims were dismissed and also dispute whether it is entitled to certain fees for hours expended prior to the dismissal.

I also agree the proposed hourly rates are reasonable. Accordingly, the only remaining dispute is whether the hours to which Plaintiffs object were "reasonably expended" by MFLLC in "successfully defending" against the ODTPA and BOPA claims.

**A.  Fees for Litigating the Fee Issue**

Plaintiffs first purport to object to "fees after August 8, 2022," arguing these fees "do not fall under the plain meaning of the [Franchise] Agreement[s]." (Doc. No. 120 at 6). In support, Plaintiffs allege that, "[o]n August 8, 2022, this Court issued its order dismissing plaintiffs ODTPA and BOPA claims," and MFLLC's "successful defense" of the subject claims concluded. (*Id.*). Therefore, Plaintiffs argue any fees after the claims were dismissed do not fall under Section 21.11 of the Franchise Agreements because they were not "incur[red] … in … successfully defending a claim that Franchisor defrauded Franchisee into signing this Agreement." (*See, e.g.*, Doc. No. 13-4 at 56). Instead, Plaintiffs allege those fees following dismissal are "fees for collection and costs of enforcement" that fall under Section 21.13 of the Franchise Agreements, which permit MFLLC to recover fees in circumstances that are indisputably not present at this time. (Doc. No. 120 at 6).

First, as an administrative matter, I note that Plaintiffs appear to have erred in their recitation of the procedural history. Judge Carr did not issue an Order dismissing the subject claims on August 8, 2022, but instead issued his first Order regarding attorney fees on this date. (Doc. No.

6

98). Judge Carr issued the Order dismissing the subject claims as to CajunLand on June 8, 2021, (Doc. No. 67), and the Order dismissing the final subject claim as to the Franchisee Plaintiffs on December 8, 2021, at the latest. (Doc. No. 80). Because Plaintiffs substantively challenge MFLLC's entitlement to fees incurred after "the claims had been successfully dismissed," (Doc. No. 120 at 6), I consider this objection to be to all hours expended after December 8, 2021.[5]

Perhaps because of the flaw in Plaintiffs' challenge, MFLLC does not substantively address whether it is contractually entitled to fees for litigating the fee issue. Instead, MFLLC asserts, "Section 21.11 of the Franchise Agreement (like Section 22.9 of the ARA) applies to MFLLC's right to fees for <u>successfully defending</u> certain claims <u>by Plaintiffs</u>, [and] Section 21.13 … does not apply to the fees awarded in the August 8 Order." (Doc. No. 124 at 4 (emphasis in original)). But the issue now is not which Section applies to fees for "successfully defending certain claims." It is which, if either, Section grants MFLLC the right to fees for litigating the fee issue.

While MFLLC does not address this issue in the context of the contract interpretation, it relies on case law to support its "fees for fees" requests. (Doc. No. 124 at 6-7). But none of the cases cited are on point. Each involves attorneys' fees provided by statute, not contract, and applies reasoning that is not applicable in this case.[6] For example, many of the cases cited adopt the

---

[5] On Plaintiffs' list of objections, they fault specific post-December 8, 2021 entries but do not do the same for any post-August 8, 2022 entry. (Doc. No. 120-1). I admit this seems to indicate Plaintiffs intended their broad "cost of enforcement" objection to apply only to those post-August 8, 2022 fees. But this position does not align with the substantive nature of their challenge.

[6] *See Turner v. Progressive Corp.*, 746 N.E.2d 702 (Ohio Ct. App. 2000) (FLSA, 29 U.S.C. § 216(b)); *Clark v. City of Los Angeles*, 803 F.2d 987 (9th Cir. 1986) (Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988(b)); *Northcross v. Bd. of Educ. of Memphis City Schs.*, 611 F.2d 624 (6th Cir. 1979) (same); *Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 868 (6th Cir. 2016) (same); *Gagne v. Maher*, 594 F.2d 336 (2d Cir. 1979) (same); *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610 (6th Cir. 2007) (False Claims Act); *Prandini v. Nat'l Tea Co.*, 585 F.2d 47 (3d Cir. 1978) (42 U.S.C. § 2000e-5(k)); *Tech. Rubber Co. v. Buckeye Egg Farm, L.P.*, No. 2:99-cv-1413, 2001 WL 1842478 (S.D. Ohio Mar. 7, 2001) (28 U.S.C. § 1447(c)).

reasoning of the *Prandini* court, which relied on public policy to conclude fees for litigating the issue of statutorily authorized fees could be awarded under the statutory fee authorization, explaining,

> If an attorney is required to expend time litigating his fee claim, yet may not be compensated for that time, the attorney's effective rate for all the hours expended on the case will be correspondingly decreased. Recognizing this fact, attorneys may become wary about taking Title VII cases, civil rights cases, or other cases for which attorneys' fees are statutorily authorized. Such a result would not comport with the purpose behind most statutory fee authorizations, Viz, the encouragement of attorneys to represent indigent clients and to act as private attorneys general in vindicating congressional policies…. Indeed, courts have consistently held that attorneys may be awarded, under statutory fee authorizations, compensation for the expenses of and time spent litigating the issue of a reasonable fee … for time spent on the fee application and successful fee appeals.

585 F.2d at 53-54 (citations omitted) (quoted by *Ne. Ohio Coal. for the Homeless*, 831 F.3d at 723-24; *Gagne*, 594 F.2d at 343-44; and *Turner*, 746 N.E.2d at 706).

Those public policy concerns do not apply here. MFLLC is not an indigent client seeking to vindicate congressional policy. Instead, it is a sophisticated business entity who contracted for the award of attorneys' fees in certain limited circumstances. MFLLC cites no authority to show "fees for fees" have been awarded under these circumstances absent contractual authorization. Therefore, I cannot conclude MFLLC is entitled to any fees for litigating this fee issue by law or under contract.

Because MFLLC may only recover fees for hours expended to "successfully defend" against the ODTPA and BOPA claims, as previously concluded by Judge Carr, I sustain Plaintiffs' objections to all fees incurred after the last of those claims were dismissed on or after December 8, 2021, as well as the following entries preceding that date:

1.) 6/16/2021, WBB, Research re counterclaims re prevailing party fees and claims against guarantors for breach of contract damages (.8), (Doc. No. 112-1 at 21);

2.) 10/27/2021, WBB, Review of fee shifting provisions and strategize re same re claims against individuals affiliated with CajunLand (.3), (Doc. No. 112-1 at 19);

8

> 3.) 11/18/2021, WBB, follow up research and correspondence to Twatson re status of other claims and issues regarding relation back and statute of limitations issues (1)[7], (Doc. No. 112-1 at 28); and
>
> 4.) 12/6/2021, WBB, Preparation of answer and affirmative defenses to breach of contract claims and assess availability of counterclaims based on dismissal of all claims against CajunLand and all non-contract claims against franchisee principals (2.0) telephone conference with TWatson re CajunLand Order, next steps and potential counter claims against principals (.5), (Doc. No. 112-1 at 24).

(*See* Doc. No. 120-1 at 1-2). Accordingly, the requested fee amount is reduced by $29,831.[8]

**B.     Disputed Fees Related to the Successful Defense**

Remaining are Plaintiffs' objections to nearly thirty other entries dated prior to the dismissal. While Plaintiffs provide an itemized list of those disputed hours, they do not state a legal or factual challenge to any. (*See* Doc. No. 120-1). Instead, they generally allege those hours were not sufficiently related to the defense of the ODTPA and BOPA claims. With no meaningful objection, I will briefly critique these disputed entries.

First, I will address Plaintiffs' objections to the following four entries related to motions for deadline extensions filed by MFLLC on April 16, 2021, and September 8, 2021, respectively, (Doc. Nos. 62 and 75):

> 1.)  4/7/2021, BB, Correspondence with Plaintiffs' counsel re agreement to extend time for response to DE 60 motion for leave to amend (0.1), (Doc. No. 112-1 at 16);
>
> 2.) 4/16/2021, BB, Multiple correspondence with opposing counsel re extension of time to file response to motion to amend to 4/26 (.3); draft, review, and file unopposed motion for extension (.3), (Doc. No. 112-1 at 16);

---

[7] In full, this entry requested fees for 1.2 hours of fees for the tasks excluded as well as "correspondence from TWatson regarding reply re motion." (Doc. No. 112-1 at 28). Because this remaining task is arguably related to the successful defense of the subject claims, I have only excluded 1 hour from the request and have found 0.2 hours to have been reasonably expended on this correspondence related to the reply filed days earlier on November 15, 2021. (Doc. No. 78).

[8] The requested is reduced by $28,886 for those fees incurred on and after December 6, 2021, for what MFLLC describes as Phases 5 and 6 of the litigation. (*See* Doc. No. 112-1 at 52-53). The remaining 2.1 hours were performed by WBB at an hourly rate of $450 – reducing the fee by $945. (*Id.* at 50-51).

> 3.) 8/31/2021, WBB, Correspondence to opposing counsel re extension request re response to Third Amended Complaint; prepare agreed motion for extension (.3), (Doc. No. 112-1 at 21); and
>
> 4.) 9/7/2021, WBB, Attention to motion for extension of time to respond to Second Amended Complaint (0.3), (Doc. No. 112-1 at 21).

(*See* Doc. No. 120-1 at 1-2). I find it is not reasonable to require Plaintiffs pay attorney fees for extensions sought by MFLLC, especially because Plaintiffs did not oppose either request. Accordingly, I exclude these 1.3 hours and reduce MFLLC's requested fees by $585.[9]

Aside from these, all disputed hours appear to have been "reasonably expended" by MFLLC's counsel to successfully defend against the ODTPA and BOPA claims. MFLLC's counsel has affirmed MFLLC's request does not include fees incurred for hours spent on this case for matters unrelated to these claims. (Doc. No. 112-1 at 3-4). Still, MFLLC admits that some of the fees sought "may have also related to the dismissal of other claims" but urges me to grant the request for these fees because those claims "'involve[d] a common core of facts or [were] based on related legal theories,' [and] it [is] 'difficult to divide the hours expended on a claim-by-claim basis.'" (Doc. No. 112 at 7 (quoting *Hensley*, 461 U.S. at 435)) (altered by me). I agree and see no basis to challenge that assertion. As such, I overrule Plaintiffs' conclusory objections to the remaining entries and conclude MFLLC is entitled to those disputed fees.

---

[9] For each of these dates BB or WBB's hourly rate was $450. (*See* Doc. No. 112-1 at 49 & 51).

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for reconsideration is denied, (Doc. No. 120), and MFLLC's motion to determine fees is granted in part and denied in part. (Doc. No. 112). While MFLLC's $93,234 request is reduced by $30,416, I conclude MFLLC has shown it is entitled to the remaining $62,818.

The manner of how these fees should be apportioned between CajunLand and the respective Franchisees and the timeline for when these fees should be paid are not issues presently before me. Accordingly, I find it premature to order any fees be paid at this time. Instead, I order these parties to confer and submit a proposal for such payment for my approval by March 26, 2024.

So Ordered.

s/ Jeffrey J. Helmick<br>
United States District Judge